# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
## 1:11 cr 30
## 1:11 cr 32

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| WALTER CORNELIUS USSERY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JONATHAN MAURICE USSERY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Pending before the Court are the Motions to Suppress [# 18 in 1:11cr30 and # 16 in 1:11cr32] filed by Defendants Walter and Jonathan Ussery. Defendants are brothers. The Grand Jury returned a Bill of Indictment as to each Defendant charging them with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). Defendants both move to suppress the evidence obtained as the result of a September 25, 2010, stop of Defendants. Specifically,

Defendants contend that the stop violated their rights under the Fourth Amendment. On July 26, 2011, the Court conducted a hearing on the motions and heard evidence and the arguments of counsel. Having carefully considered the evidence, the briefs, and the arguments of counsel, the Court **RECOMMENDS** that the District Court **DENY** the Motions to Suppress.

I. **Background**

Lieutenant Eric Shelton is a member of the Forest City Police Department. He has worked for the Forest City Police Department for the last ten years. On August 29, 2010, Lieutenant Shelton responded to a report of an armed robbery at a Wendy's. His investigation revealed that two black males in their early twenties came into the Wendy's around 10:00 p.m. wearing baggy clothing with baseball caps pulled low. One of the subjects was wearing a fake dreadlocks wig. The two subjects ordered food then sat at a table. Once the employees locked the door into the lobby area so that no more patrons could come inside, the two suspects went into the back area of the Wendy's and robbed the restaurant at gunpoint. The two suspects then left on foot. Lieutenant Shelton did not, however, see the two suspects himself.

The Forest City Police Department was unable to apprehend the two suspects. The Police Department and the local media made the area businesses and their employees aware of the description of the two suspects.

On September 25, 2010, the Forest City Police Department received a call between 10:00 and 10:20 p.m. from an employee at a local Arby's reporting that two suspicious black males wearing baggy clothing, baseball caps, and one wearing a fake dreadlocks wig were inside the restaurant. A call then went out over the police radio system, which provided a description of the two men at Arby's. In addition, Lieutenant Shelton testified that dispatch stated that the description of the two men in Arby's fit the description of the suspects from the Wendy's robbery. Lieutenant Shelton, who was only two miles away at the time, immediately responded to the call.

When he arrived at Arby's, Lieutenant Shelton turned out the lights on his patrol car and pulled into the parking lot; he did not go inside the restaurant. Lieutenant Shelton went to the north end of the building and looked through an open window. He noticed two black males in front of the counter that fit the description of the 911 call, as well as the description of the suspects involved in the Wendy's robbery. One of the males was pacing back and forth in front of the counter and looking around. He did not notice any weapons, and he did not see a crime being committed.

After the Defendants left the restaurant, Lieutenant Shelton spoke with the manager and employee that called 911. The employee who made the call told Lieutenant Shelton "that's them. That's them that just walked out." She also stated

3

"that's the same description from the Wendy's" and "that's the fake dread wig."

Meanwhile, Officer Josh Williams arrived on the scene in a marked patrol car. Officer Williams went to the front of the building in his patrol car just as the Defendants were exiting the Arby's. Officer Williams noticed that Defendant Jonathon Ussery was wearing a baseball cap, a dreadlocks wig, and baggy pants. Defendant Walter Ussery was wearing baggy clothing, sunglasses, and a baseball hat.

Lieutenant Shelton suspected that Defendants might be the individuals who robbed the Wendy's, and that they were going to rob the Arby's. The officers, however, decided to wait and stop Defendants in an area between the Arby's and another restaurant because there was more light in that area. When Defendants walked into this area, Lieutenant Shelton pulled up to them in a marked patrol car with his window down. He told Defendants, "Hey guys, would you guys come over here and just talk to me for a minute?" At the time, the patrol car was approximately fifteen feet away from Defendants. Defendants responded by asking what they did wrong and why they were being stopped.

Lieutenant Shelton then got out of the patrol car and began talking to Defendants. As Lieutenant Shelton was exiting his vehicle, Officer Williams pulled up behind Lieutenant Shelton. Officer Williams then exited his patrol car as the Defendants were walking towards Lieutenant Shelton.

Defendants both appeared nervous. Defendant Jonathan Ussery was fidgeting with the wig and pulling it to hide his face. Lieutenant Shelton asked Defendant Walter Ussery what his name was and if he had any identification. Defendant Walter Ussery responded that his name was Jonathan and he lived on Wells Drive. Lieutenant Shelton stated that he did not recognize him from living on Wells Drive and asked him to remove his hat and glasses. He also asked Defendant Jonathan Ussery to remove the wig, to which Defendant Jonathan Ussery responded that it was not a wig. Neither Defendant produced any identification.

Lieutenant Shelton then asked Defendants if they had any contraband, weapons, or anything illegal on them. Defendant Walter Ussery immediately reached into his right front pocket at his waist. Defendant Jonathon Ussery grabbed his waistband. Lieutenant Shelton thought that Defendant Walter Ussery might be reaching for a weapon so he grabbed his right wrist and held it inside his pocket; he also told Defendant Walter Ussery not to remove his hand from his pocket. With his free hand, Lieutenant Shelton felt the front waist area of Defendant Walter Ussery, where he felt a small hand gun. Lieutenant Shelton then shouted "gun" or "gun, get his hands" to Officer Williams. Prior to this point, Officer Williams had only touched the outside of Defendant Jonathan Ussery's rear pockets. Approximately three minutes transpired between the time Lieutenant Shelton asked Defendants to come over and when he

grabbed Defendant Walter Ussery's wrist.

When Lieutenant Shelton shouted "gun," Officer Williams tried to secure Defendant Jonathan Ussery's left forearm. Defendant Jonathan Ussery jerked away from Officer Williams and fled on foot; Officer Williams gave chase. During the chase, the dreadlocks wig Defendant Jonathan Ussery was wearing fell off. After a struggle, Officer Williams was able to restrain Defendant Jonathan Ussery with the help of several civilians. A 38 revolver was found in the roadway near the wig. Officer Williams, however, had not seen the gun on Defendant Jonathan Ussery.

Lieutenant Shelton stayed with Defendant Walter Ussery while Officer Williams chased Defendant Jonathan Ussery. Lieutenant Shelton eventually recovered a small semi-automatic pistol from Defendant Walter Ussery's pants.

**II.     Discussion**

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized.

U.S. Const. amend 4. Pursuant to the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot not used in a criminal proceeding against the victim of the illegal search and seizure." United States v. Calandra, 414 U.S. 338,

347, 94 S. Ct. 613, 619 (1974) Here, Defendants contend that Lieutenant Shelton and Officer Williams illegally seized Defendants because they lacked reasonable suspicion to stop and detain Defendants. Although the Court questions whether the initial questioning of Defendants even implicates their Fourth Amendment rights, the Court will assume, for purposes of ruling on Defendants' motion, that the entire discussion between Defendants and the officers was not consensual and, thus, implicates Defendants' Fourth Amendment rights. See United States v. McFarley, 991 F.2d 1188, 1192 (4th Cir. 1993).

The Fourth Amendment allows an officer to make a brief, investigatory stop of an individual where the officer has a reasonable suspicion that the individual has committed or is about to commit a crime. United States v. Foster, 634 F.3d 243, 246 (4th Cir. 2011); United States v. Hernandez-Mendez, 626 F.3d 203, 297 (4th Cir. 2010); United States v. Johnson, 599 F.3d 339, 345 (4th Cir. 2010). An investigative stop of this nature, commonly referred to as a Terry stop, allows an officer to detain the individual to "'investigate the circumstances that provoke suspicion.'" Johnson, 599 at 345 (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 881, 95 S. Ct. 2574 (1975)); see also United States v. Mason, 628 F.3d 123, 128 (4th Cir. 2010). An officer can demonstrate reasonable suspicion by pointing "to specific and articulable facts which, taken together with rational inferences from those facts, reasonably

7

warrant that intrusion." Foster, 634 F.3d at 246 (internal quotation marks and citation omitted). Put simply, the officer must have an objectively reasonable basis for suspecting criminal activity to warrant a Terry stop. Hernandez-Mendez, 626 F.3d at 297. Courts must look to the totality of the circumstances to determine whether an "officer had a particularized and objective basis for suspecting criminal activity." Foster, 634 F.3d at 246; see also Hernandez-Mendez, 626 F.3d at 297; Mason, 628 F.3d at 128.

Here, Lieutenant Shelton and Officer Williams testified as to specific facts that, based on the totality of the circumstances, demonstrated a particularized and objective basis for suspecting that Defendants were engaged in criminal activity. Lieutenant Shelton went to the Arby's in question in response to a 911 call from an employee at the Arby's stating that two individuals fitting the description of the suspects in a prior robbery were in the restaurant. Defendants were black males in their twenties, dressed in baggy clothing, wearing baseball caps, and one was wearing a dreadlocks wig, just like the suspects from the prior robbery. Moreover, Defendants entered the Arby's as the employees were about to lock the lobby door, just as had occurred in the Wendy's robbery.

Upon arriving at the scene, Lieutenant Shelton briefly observed Defendants in the Arby's and confirmed that they matched the description of the suspects from the

8

prior robbery. He also noticed that one of the Defendants was pacing back and froth in front of the counter and looking around. Although Lieutenant Shelton did not observe any weapons and Defendants did not in fact rob the Arby's, Lieutenant Shelton had a particularized and objective basis for believing that Defendants were engaged in criminal activity and might be the individuals who robbed the Wendy's or were planning on robbing the Arby's. Based on all the circumstances, a reasonable officer in Lieutenant Shelton's position would have suspected that Defendants were engaged in criminal activity, and, thus, a Terry stop was warranted.

Moreover, the length of the stop was reasonable and did not convert what might have been a lawful stop into an arrest that would have to be supported by probable cause. See McFarley, 991 F.2d at 1193. Only three minutes transpired from the period between Lieutenant Shelton stopping Defendants and Defendant Jonathan Ussery fleeing on foot. Based on the circumstances, three minutes is not an unreasonable amount of time.

Finally, the frisk of Defendants did not exceed the bounds of a Terry stop as it was objectively reasonable for the officers to pat down Defendants for weapons. See Hernandez-Mendez, 626 F.3d at 211 ("courts assess the reasonableness of a frisk using an objective standard and not an officer's subjective intent.") "A frisk for weapons is permissible when an officer reasonably believes that the person being

stopped 'may be armed and presently dangerous.'" Id. (quoting Terry, 392 U.S. at 24, 88 S. Ct. 1868). Defendants fit the description of the suspects who had robbed a Wendy's at gunpoint and Lieutenant Shelton suspected that they might be about to rob the Arby's. In response to Lieutenant Shelton asking whether Defendants were carrying weapons, Defendant Walter Ussery immediately reached into his right front pocket. Defendant Jonathon Ussery grabbed his waistband. It was objectively reasonable for Lieutenant Shelton and Officer Williams to believe that the Defendants might be armed and for both to pat down Defendants for weapons. The objective facts and circumstances provided Lieutenant Shelton and Officer Williams a reasonable suspicion justifying a frisk. Accordingly, the frisk of Defendants did not exceed the bounds of a Terry stop.

The Court finds that the questioning and subsequent pat down of Defendants did not violate their rights under the Fourth Amendment. The Court, therefore, **RECOMMENDS** that the District Court **DENY** Defendants' motions.

### III. Conclusion

The Court **RECOMMENDS** that the District Court **DENY** Defendants' Motions to Suppress [# 18 in 1:11cr30 and # 16 in 1:11cr32].

**Time for Objections**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(c), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

Signed: September 9, 2011

*[signature: Dennis L. Howell]*

Dennis L. Howell
United States Magistrate Judge