THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:11-cr-00032-MR-WCM

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>JONATHAN MAURICE USSERY, )<br>)<br>Defendant. )<br>_____ ) | **O R D E R** |

**THIS MATTER** is before the Court on the Defendant's Motion for Reduced Sentence under Amendment 821 [Doc. 68].

**I.    BACKGROUND**

In September 2010, police received a call from the manager of the Arby's restaurant in Forest City, North Carolina. [Doc. 35: PSR at ¶ 5]. The manager reported that two men in the restaurant—later identified as the Defendant Jonathan Maurice Ussery and his brother—appeared suspicious and matched the description of men who had recently robbed a nearby Wendy's restaurant. [Id.]. The men were wearing ball caps, sunglasses, and the Defendant was wearing a wig. [Id. at ¶¶ 5-6].

A police officer arrived at the restaurant, and after the Defendant and his brother heard the officer speaking to the police department, they both left

the restaurant after receiving their food order. [Id. at ¶ 5]. Shortly thereafter, two officers approached the men in the parking lot and asked the Defendant to remove his wig. [Id.]. The Defendant refused, stating it was his real hair. [Id.]. During a pat-down search, an officer felt a gun in the Defendant's brother's pocket. [Id.]. The Defendant then ran away, and an officer pursued him, eventually catching up with him in the middle of the street. [Id. at ¶ 6]. A struggle ensued, during which a loaded firearm fell from the Defendant's person. [Id.]. The Defendant eventually broke away before the police officer caught up with him again. [Id.]. As the two men fought and wrestled on the ground, the Defendant repeatedly grabbed the officer's service weapon, yelling over and over again, "I've got your gun!" [Id. at ¶ 7]. Despite repeated attempts, the Defendant was not able to unholster the firearm, and the men continued to struggle as they tumbled down a hill and into a yard near a residence. [Id. at ¶ 8]. Eventually, two bystanders assisted, and the group were able to subdue the Defendant, though he continued to struggle until additional police officers arrived to assist. [Id.],

The Defendant had previously been convicted of felony possession with intent to sell/deliver cocaine and felony assault with a deadly weapon on a government official. [Id. at ¶ 11]. During the assault offense, the Defendant had rammed his car into a deputy sheriff's patrol car. [Id. at ¶ 29].

2

The Defendant had numerous probation violations related to that conviction. [Id.]. Between 2001 and 2008, the Defendant was convicted of six offenses involving assaults or controlled substances. [Id. at ¶¶ 28-29, 31-34].

A federal grand jury indicted the Defendant and charged him with possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). [Doc. 3]. The Defendant pled guilty to the firearm offense. [Doc. 29].

In advance of sentencing, the Court's probation office submitted a Presentence Report and calculated a total offense level of 27, which included a four-offense-level increase because the Defendant possessed the firearm intending to possess it in connection with the robbery of the Arby's and a six-offense-level increase because the Defendant assaulted a police officer and created a substantial risk of serious bodily injury. [Id. at ¶¶ 17, 18, 25].

The Defendant's criminal history garnered six criminal history points related to his prior convictions. [Id. at ¶ 40]. The probation office also assessed two criminal history points because the Defendant committed his offense while he was on probation, resulting a total criminal history score of eight, which corresponded to a criminal history category of IV. [Id. at ¶¶ 41, 42]. Based on a total offense level of 27 and a criminal history category of IV, the probation office calculated an advisory guidelines sentence of 100 to

120 months' imprisonment. [Id. at ¶ 83 (limiting the upper end of the guidelines range to the statutorily authorized maximum sentence)].

At sentencing, defense counsel argued that the Defendant should not have been on probation at the time of his offense, citing to an affidavit from his state court attorney and state court documents. [Doc. 48 at 13-15]. Defense counsel asked the Court to vary downward to a criminal history category of III. [Id. at 15]. Counsel also objected to the four-offense-level increase for possessing a firearm in connection with another felony offense. [Id. at 6-7].

The Court sustained the objection to the four-offense-level increase and found that the Sentencing Guidelines advised a sentence between 70 and 87 months' imprisonment based on a total offense level of 23 and a criminal history category of IV. [Id. at 12; Doc. 40 at 1]. The Court declined to vary downward based on the Defendant's argument that he should not have been on probation at the time of his offense, which would have resulted in zero status points. [Doc. 48 at 36]. However, the Court stated that it had "taken that into account to a certain degree" and had "certainly not gone to the top end of the guideline range," even though the Defendant's offense conduct included assaulting an officer and "steadfastly trying to obtain the officer's service weapon, presumably for the purpose of trying to do harm to

4

that officer." [Id. at 35-36]. The Court therefore sentenced the Defendant to 79 months, in the middle of the advisory guideline range. [Doc. 39 at 2].

The Defendant, through counsel, now moves for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(2) and Part A of Amendment 821 to the United States Sentencing Guidelines. [Doc. 68]. The Government opposes the Defendant's Motion. [Doc. 70].

## II. STANDARD OF REVIEW

Pursuant to § 3582(c)(2), the Court may modify a term of imprisonment that was based on a sentencing range that has subsequently been lowered by the Sentencing Commission, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

When addressing a § 3582(c)(2) motion based on a retroactive guidelines amendment, the Court follows a two-step process. At the first step, the Court must "follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." United States v. Martin, 916 F.3d 389, 395 (4th Cir. 2019) (quoting Dillon v. United States, 560 U.S. 817, 827 (2010)). In so doing, the Court "begin[s] by determining the amended guideline range that

5

would have been applicable to the defendant had the relevant amendment been in effect at the time of the initial sentencing." Martin, 916 F.3d at 395 (quoting Dillon, 560 U.S. at 827). At the second step, the Court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." Martin, 916 F.3d at 395 (quoting Dillon, 560 U.S. at 827).

## III. DISCUSSION

At the time that the Defendant was sentenced, U.S.S.G. § 4A1.1 provided for the addition of two criminal history "status" points if the defendant committed the offense of conviction while under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status. U.S.S.G. § 4A1.1(d) (2019). Part A of Amendment 821, effective November 1, 2023, amended this provision. As revised, § 4A1.1 eliminates the addition of such status points for a defendant who has six or less criminal history points and provides for the addition of only one status point for those defendants with seven or more criminal history points. U.S.S.G. § 4A1.1(e) (2023). The Sentencing Commission has made Part A and Part B, Subpart 1, of Amendment 821 retroactively applicable, authorizing eligible defendants to seek a discretionary sentence reduction

6

under § 3582(c)(2). U.S.S.G. Amend. 825; see U.S.S.G. § 1B1.10(d). This retroactivity amendment provides that any order reducing a defendant's sentence must have "an effective date of February 1, 2024, or later." U.S.S.G. Amend. 825; see also U.S.S.G. § 1B1.10 cmt. n.7.

The Defendant is eligible for a sentence reduction under Amendment 821. At the time of sentencing, the Defendant was assigned a total of eight criminal history points, including two "status points" under § 4A1.1(d) (2019), which corresponded to a criminal history category of IV. With the revision to § 4A1.1 under Amendment 821, the Defendant would receive zero status points, reducing his criminal history score from eight to six. That score corresponds to a criminal history category of III, which results in a revised advisory guidelines range of 57 to 71 months.

Having determined the amended guidelines range that would have been applicable to the Defendant had the relevant amendment been in effect at the time of the initial sentencing, the Court now turns to the § 3553(a) factors to determine whether the reduction authorized by Amendment 821 is warranted in whole or in part.

The Defendant contends that the Court should reduce his sentence to no more than 64 months, which would be a proportionate reduction equal to the middle of the amended guidelines range. [Doc. 68 at 1]. However, a

review of the § 3553(a) factors counsel against a reduced sentence. Although the Defendant has not committed any disciplinary infractions while in prison and has completed a fair number of educational courses [see Doc. 71 at 2], the nature of his offense conduct and his serious and persistent criminal history weigh against a discretionary sentence reduction. The Defendant's criminal history includes multiple violent assaults and two drug-trafficking offenses. Further, as the Court explained at sentencing, the Defendant's instant offense involved a prolonged assault of a police officer, during which the Defendant repeatedly attempted to gain control of the officer's firearm. Additionally, the Court has already taken into consideration the status points that Amendment 821 removes from the Defendant's guideline calculation. As the Court explained at sentencing, it had not imposed a sentence at the high end of the guideline range because the Defendant had shown that but for an administrative error, he would not have been on probation. In light of these considerations, the Court finds that the Defendant's current sentence of 79 months in prison is still sufficient, but not greater than necessary, to accomplish the sentencing objectives described in 18 U.S.C. § 3553(a), including the need to protect the public and the need to deter both the Defendant and others from that kind of violent and threatening behavior toward a police officer.

8

For all of these reasons, the Court in its discretion denies the Defendant's motion for a sentence reduction.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Reduced Sentence under Amendment 821 [Doc. 68] is **DENIED**.

**IT IS SO ORDERED.**

Signed: February 5, 2024

Martin Reidinger
Chief United States District Judge